IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| UNITED STATES OF AMERICA : | |
| : | |
| v. : | CRIMINAL NO. 22-cr-00326 |
| : | |
| DUANE TAYLOR : | |

**MEMORANDUM OPINION**

**GALLAGHER, J.**                                                                                          **May 15, 2024**

Defendant, Duane Taylor, who is charged with one count of kidnapping of a minor, in violation of 18 U.S.C. § 1201, one count of travel with intent to engage in illicit sexual conduct, in violation of 18 U.S.C. § 2423, one count of production of child pornography, in violation of 18 U.S.C. § 2251, one count of transportation of child pornography, in violation of 18 U.S.C. §§ 2252(a)(1), (b)(1), and one count of possession of child pornography, in violation of 18 U.S.C. §§ 2252(a)(4), (b)(2), seeks to suppress statements given to agents of the Federal Bureau of Investigations ("FBI"), as he contends they were not made as a result of a voluntary, knowing, and intelligent waiver of his *Miranda* rights, and because he was not taken for arraignment within six hours of being placed under arrest in violation of Federal Rule of Criminal Procedure 5(a)(1)(A) and 18 U.S.C. § 3501. The Government contends that the statements were a result of a voluntary, knowing, and intelligent waiver, and because Defendant gave the statements while in state custody, on state charges, and there was no collusion, the delay in federal arraignment and the "six-hour rule" does not apply. The Court agrees with the Government and therefore denies Defendant's Motion to Suppress.

## I.   BACKGROUND

On August 31, 2022, after a juvenile female was reportedly taken from her home in Reading, Pennsylvania, the local police department requested assistance from the FBI in the Eastern District of Pennsylvania ("EDPA") in attempt to contact law enforcement in Brooklyn, New York, where the suspect was believed to reside. Pretrial Hearing Transcript, February 22, 2024, at 8:1-4, ECF No. 66. An FBI agent facilitated communication and the New York City Transit Authority Police located Defendant at his residence in Brooklyn. *Id.* at 8:16-25, 9:1-3, 19-25.

The Reading Police Department executed an arrest warrant for Defendant and charged him with Kidnapping in violation of Pennsylvania law that same day. *Id.* at 10:5-22. Upon issuance of the warrant, the New York City Transit Authority Police placed Defendant under arrest, with no FBI agents present. *Id.* at 11:18-24. The next day, multiple offices, including FBI offices within the Eastern District of Pennsylvania and New York, the United States Attorney's offices in the Eastern District of Pennsylvania and New York City, and the District Attorney's Office in Brooklyn discussed who would continue to facilitate the investigation. *Id.* at 12:10-20.  Between approximately one and two o'clock in the afternoon of September 1, 2022, it was decided that the Eastern District of Pennsylvania FBI Office would oversee the remainder of the investigation. *Id.* at 13:1-4.

Approximately half an hour after that determination was made, Agents from the New York FBI conducted an interview of Defendant on behalf of the EDPA FBI office. *Id.* at 13:5-13. At that time, Defendant was still detained on active Pennsylvania kidnapping charges. *Id.* at 13:16-18. While Defendant was not then taken before a magistrate judge, that decision was not made at the direction of the FBI. *Id.* at 13:19-25, 14:7-9. Upon waiving his *Miranda* rights, Defendant confessed to kidnapping the victim, bringing her to New York, sexually assaulted her, and

recording the assaults. Government Exhibit 3, Taylor Confession. Defendant was subsequently arraigned by a New York City Municipal Court on the Pennsylvania warrant. *See* Defense Exhibit 1.

During the evening hours of September 1, 2022, a criminal complaint and warrant was issued out of the Eastern District of Pennsylvania. Pretrial Hearing Transcript, ECF No. 66, at 14:10-13. On September 12, 2022, Defendant was taken into federal custody and arraigned by a Federal Magistrate Judge. *Id.* at 16:23-25-17:1-6.

On December 27, 2023, Defendant filed a Motion to Suppress the statements given while detained on the Pennsylvania charges. A pretrial hearing on Defendant's Motion was held on February 22, 2024, where FBI Special Agent Benjamin Jacobs testified for the Government. Upon stipulation by and between the Government and Defendant, the Government admitted Defendant's criminal complaint from Berks County, PA, his complaint and warrant from Magistrate Judge Carlos, Defendant's recorded statement taken in New York, notes taken by an interviewing FBI agent during Defendant's recorded statement, and Defendant's waiver of his *Miranda* rights. Likewise, Defendant admitted communication and documents from a defense attorney who spoke with Defendant before his arraignment in New York, internal emails between federal agencies discussing charges, and a video of Defendant's arrest.

## II.     DISCUSSION

Defendant seeks to suppress his post-arrest, video-recorded statements to FBI agents while in state custody. He alleges the statements were not made as a result of a voluntary, knowing, and intelligent waiver of his *Miranda* rights, and the statements were made more than six hours after his arrest without counsel and before his presentment to a magistrate in violation of his federal rights. For the following reasons, the Court disagrees.

### A. Voluntary, Knowing, Intelligent

Defendant challenges the admissibility of his statements, alleging he did not voluntarily, knowingly, and intelligently waive his *Miranda* rights.[1] The Court disagrees.

The Fifth Amendment to the United States Constitution provides that no person "shall be compelled in any criminal case to be a witness against himself." U.S. Const. amend. V. "The privilege against self-incrimination protects individuals not only from legal compulsion to testify in a criminal courtroom but also from informal compulsion exerted by law-enforcement officers during in-custody questioning" *United States v. Williams*, 3:21-CR-34, 2022 WL 1498058, *1 (M.D. Pa. May 11, 2022) (internal citations and quotation marks omitted). The United States Supreme Court has held that statements stemming from a custodial interrogation are only admissible when certain procedural safeguards are employed to "secure the privilege against self-incrimination." *Miranda v. Arizona*, 384 U.S. 436, 444 (1966). One such procedural safeguard is the reading of the *Miranda* warnings. *Id.* [2]

A person may waive their *Miranda* rights and proceed with custodial questioning. *Id.* The waiver must be voluntary, knowing, and intelligent, which the court evaluates under a totality of the circumstances analysis. *Id.*; *see also Williams*, 2022 WL 1498058 at *1 (internal citations omitted). This requirement is satisfied if a defendant waives with "full awareness both of the nature of the right being abandoned and the consequences of the decision to abandon it." *Williams*, 2022

---

[1] While Defendant's Memorandum of Law in Support of his Motion and his Proposed Order do not mention his voluntary, knowing, and intelligent waiver argument, it is briefly mentioned in his Motion. *See* Def. Motion to Suppress, ECF No. 49 at 1. If Defendant perceived a constitutional violation, it should have been addressed at length in the motion. As it was not properly raised by Defendant, the Government did not fully address the argument in their Response in Opposition. The Court addresses its interpretation of the argument here.

[2] "Prior to any questioning, the person must be warned that he has the right to remain silent, that any statements he does make may be used as evidence against him, and that he has a right to the presence of an attorney, either retained or appointed."

WL 1498058 at *1 (*quoting Colorado v. Spring*, 479 U.S. 564, 573 (1987) (internal citations omitted)).

Further, not only does a defendant's waiver of his *Miranda* rights have to be voluntary, but any subsequent confession must also be voluntarily given.[3] To determine voluntariness, a court "looks at the totality of the circumstances to determine whether, because of police conduct, the defendant's 'will has been overborne and his capacity for self-determination critically impaired.'" *Commonwealth v. Roberts*, 969 A.2d 594, 598-99 (Pa. Super. 2009) (internal citations omitted). Courts should look to the following factors: "the duration and means of the interrogation; the physical and psychological state of the accused; the conditions attendant to the detention; the attitude of the interrogator; and any and all other factors that could drain a person's ability to withstand coercion." *Id.* at 599.

Prior to any custodial interrogation, the FBI agents read Defendant his individual *Miranda* rights, and he indicated he understood each and every right. Government Exhibit 3, Taylor Confession at :09-:10:30. The agent emphasized that Defendant could stop answering at any time and was not bound by his decision to speak or answer questions. *Id.* at :09:59-:10:30. The agents then presented Defendant with a written waiver of his rights, which he signed and indicated he wanted to speak to the agents. *Id.* at :10:30-:10:38. At no time was Defendant coerced, pressured, or mislead into signing the waiver. *See id*. He appeared to understand his rights and verbally indicated the same. *Id.* at :09:00-:10:30. There is no evidence that the waiver was anything but voluntary, knowing, and intelligent.

Further, Defendant's will was not overborn, nor was his capacity for self-determination impaired, at any stage of the interview. The questioning, conducted by two agents, lasted for

---

[3] Because Defendant provides no legal analysis for his voluntariness argument, the Court addresses the voluntariness of his *Miranda* waiver and the subsequent statements.

5

approximately one hour. *Id.* Before the agents asked Defendant any substantive questions, they asked him if he was "doing okay," or if he needed food or water. *Id.* at :08. Defendant's only request was for a cigarette, and he declined subsequent offers for water when he began coughing during a response. *Id.* at :08, :19:56-20:35. The agents informed Defendant that he could refuse to answer any and all questioning at any point in the proceeding and repeatedly told Defendant to correct them if they were interpreting his answers incorrectly, as they did not want to "suggest anything." *Id.* at :35:10-:35:20.

Throughout the interrogation, Defendant was alert and responsive. He exhibited a logical thought process, and his answers were directly related to the immediately preceding question. He even corrected the agents when he believed they were suggesting incorrect information. *See id.* While he used his hands to cover his face during part of the interview, he did not appear to be in physical distress. He removed his hand to look at photos shown to him during the interview. *Id.* at :26:40, 29:54. Therefore, the agent's behavior was not coercive, nor did Defendant exhibit signs of an overborne will.

### B. Federal Presentment

Defendant next argues that his federal right to prompt presentment was violated, and therefore, his statements must be suppressed. The Court disagrees.

When a defendant is arrested and detained on federal charges, the Federal Rules of Criminal Procedure provide that "[a] person making an arrest with the United States must take the defendant without unnecessary delay before a magistrate judge, or before a state or local judicial officer…" Fed. R. Crim. P. 5(a)(1)(A). Further, in federal cases, 18 U.S.C.S. § 3501 provides that if a confession occurs before presentment to a magistrate judge and more than six-hours after arrest, the Court must decide whether the delay was unreasonable or unnecessary. *United States v. Thompson*, 772 F.3d 752, 761 (3d Cir. 2014). If it was, the confession must be suppressed. *Id.*

6

However, the "duty to present a person to a federal magistrate does not arise until the person has been arrested for a *federal* offense." *United States v. Alvarez-Sanchez*, 511 U.S. 350, 358 (1994). When a person is detained solely on state charges, "there is no duty, obligation, or reason to bring him before a judicial officer 'empowered to commit persons charged with offenses against the laws of the United States.'" Therefore, if a "person is arrested and held on state charges, § 3501(c) does not apply." *Id.* "This is true even if the arresting officers… believe or have cause to believe that the person also may have violated federal law." *Id.*

State and local authorities may not engage in collusion with federal officers to "arrest and detain someone in order to allow the federal agents to interrogate him in violation of his right to a prompt federal presentment." *Id.* at 359. It is the defendant's burden to demonstrate such improper collusion, and "routine cooperation between local and federal authorities is, by itself, wholly unobjectionable." *Id.* at 359-60.

Here, Defendant was not charged with a federal offense until approximately four hours after he gave his inculpatory statements. While the FBI cooperated with local law enforcement to detain Defendant, there was no improper collusion for the purpose of interrogating him in violation of his right to a prompt federal presentment. As the FBI and local law enforcement shared information and proposed strategies for prosecuting Defendant, uncertainty remained over whether this would happen at the state or federal level. *See* Def. Ex. 2. In the hours leading up to his confession, the local District Attorney's office in New York still considered proceeding with state charges. *Id.* While the emails clearly show a desire to charge Defendant federally, they do not show a motive to impede upon Defendant's constitutional rights. In fact, the emails evidence tension over who would continue with the investigation. *Id.* (Stephen email, September 1, 2022, at 1:09 p.m.) ("the Kings County DA's office is quite upset…They were considering local charges-

even for sexual assault- which they can do. Removing the victim from their jurisdiction without a conversation has them a bit upset.").

Less than an hour after the agencies determined the Eastern District of Pennsylvania would proceed with the investigation, the FBI began interrogating Defendant. Pretrial Hearing Transcript, February 22, 2024, at 13:5-13, ECF No. 66. During that time, the two agencies continued to work together. Def. Ex. 2. (Stephen email, September 1, 2022, at 1:59 p.m.) ("…they have NY officers standing by to help execute and want to know if we are requiring their aid."). This evidences that the collaborative environment was routine, multifaceted, and not an elaborate ploy to interrogate Defendant absent presentment. Defendant has failed to carry his burden of showing anything beyond routine cooperation and has not shown improper collusion.

### III.   CONCLUSION

Based on the forgoing reasons, Defendant's Motion to Suppress his Post-Arrest, Video-Recorded Statement is **DENIED**. The Court finds Defendant's statements voluntary and finds the delay in federal presentment inapplicable to this case, as Defendant was detained on state charges while interviewed and Defendant failed to show collusion between the state and federal government for the purpose of violating his right to prompt presentment.

An appropriate Order follows.

BY THE COURT:

*/s/ John M. Gallagher*
JOHN M. GALLAGHER
United States District Court Judge